UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JANIS HART, CARLETON HART,

                Plaintiffs,

-vs-                                Case No.  5:05-cv-126-Oc-10GRJ

V.B. INVESTMENTS, INC. d/b/a
Buchanan/Jenkins Hyundai,

                Defendant.

_____

## O R D E R

This is an action pursuant to the Truth In Lending Act, ("TILA") 15 U.S.C. § 1601, *et seq.*, arising out of the Plaintiffs' purchase of an automobile, a 2004 Hyundai Santa Fe, from the Defendant's car lot. The Plaintiffs claim that the Defendant failed to disclose that it had "rolled up" part of the unpaid loan on their trade-in vehicle into the amount financed to purchase the Hyundai Santa Fe. The case is before the Court on the Defendant's motion to dismiss (Doc. 4) and the Plaintiffs' response (Doc. 6). Upon due consideration, the motion is due to be granted, and the complaint is due to be dismissed.

### Background and Facts[1]

On March 2, 2004, the Plaintiffs, Janis and Carleton Hart, purchased a 2004 Hyundai Santa Fe from the Defendant, V.B. Investments, Inc., doing business as Buchanan/Jenkins Hyundai here in Ocala, Florida, and at the same time traded in their 2001 Chrysler PT Cruiser.  The sale contract prepared by the Defendant and attached to the complaint lists

_____

[1] The following facts are alleged in the complaint (Doc. 1) and will be taken as true for purposes of the motion to dismiss.

the cash price (including tax) of the Santa Fe as $27,913.30.  At the time of the sale, the Plaintiffs still owed $13,522.00 on their PT Cruiser.  The Defendant recorded this amount as the amount owed on the trade-in and also recorded the same amount as the trade-in allowance, resulting in a net trade-in of zero.  According to the Plaintiffs, the PT Cruiser was actually worth less than the amount still owed on it - i.e., less than the $13,522.00 recorded as its trade-in value.[2]

What's the problem? The Plaintiffs say that the Defendant sold the Santa Fe to them for more than what it was ordinarily worth. They allege that the Defendant "over inflated and misrepresented" the actual price of the Santa Fe by an amount equal to the amount that the trade-in allowance was inflated.[3] In so doing, the Defendant "rolled" part of the unpaid loan on the trade-in (the excess of the amount owed over its actual value) into the price of the Santa Fe.  This was done in an effort to secure financing for the Plaintiffs by making it appear that they were not including debt in the financing for the new vehicle.  By "balancing" the trade-in in this way, the Defendant disguised the fact that the trade-in was actually a "negative" downpayment, due to its value being lower than the amount still owed on it, which the Defendant used to impermissibly raise the cash price of the Santa Fe.[4]  The

---

[2] The sale contract also shows a total downpayment of $2,500.00, consisting of $1,500.00 in cash and a $1,000.00 rebate.

[3] Doc. 1, ¶¶ 13 & 14.

[4] 12 C.F.R. § 226, Supp. I 2(a)(18)3 provides in pertinent part:

i. *No cash payment.* In a credit sale, the "downpayment" may only be used to reduce the cash price. For example, when a trade-in is used as the downpayment

(continued...)

Plaintiffs contend that the Defendant should have disclosed the "rolled over" debt as an

"additional amount financed" in accordance with TILA regulations.

The Defendant moves to dismiss the complaint on two grounds: (1) the Plaintiffs

have not alleged damages under the TILA; and (2) it is plain from the face of the complaint

---

[4](...continued)
and the existing lien on an automobile to be traded in exceeds the value of the automobile, creditors must disclose a zero on the downpayment line rather than a negative number. To illustrate, assume a consumer owes $10,000 on an existing automobile loan and that the trade-in value of the automobile is only $8,000, leaving a $2,000 deficit. The creditor should disclose a downpayment of $0, not -$2,000.
ii. *Cash payment.* If the consumer makes a cash payment, creditors may, at their option, disclose the entire cash payment as the downpayment, or apply the cash payment first to any excess lien amount and disclose any remaining cash as the downpayment. In the above example:
A. If the downpayment disclosed is equal to the cash payment, the $2,000 deficit must be reflected as an additional amount financed under § 266.18(b)(2).
B. If the consumer provides $1,500 in cash (which does not extinguish the $2,000 deficit), the creditor may disclose a downpayment of $1,500 or of $0.
C. If the consumer provides $3,000 in cash, the creditor may disclose a downpayment of $3,000 or of $1,000.

15 U.S.C. § 1638(a)(2)(B) provides:

In conjunction with the disclosure of the amount financed, a creditor shall provide a statement of the consumer's right to obtain, upon a written request, a written itemization of the amount financed. The statement shall include spaces for a "yes" and "no" indication to be initialed by the consumer to indicate whether the consumer wants a written itemization of the amount financed. Upon receiving an affirmative indication, the creditor shall provide, at the time other disclosures are required to be furnished, a written itemization of the amount financed. For the purposes of this subparagraph, "itemization of the amount financed" means a disclosure of the following items, to the extent applicable:
. . .
(iii) each amount that is or will be paid to third persons by the creditor on the consumer's behalf, together with an identification of or reference to the third person.
. . .

that the statute of limitations has expired. The Court agrees and concludes that dismissal of the complaint with prejudice is appropriate.

## Motion to Dismiss Standard

In passing on a motion to dismiss under Rule 12(b)(6), the Court is mindful that "[d]ismissal of a claim on the basis of barebones pleadings is a precarious disposition with a high mortality rate."[5]  As the Supreme Court declared in Conley v. Gibson, a complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."[6] Thus, if a Complaint "shows that the Plaintiff is entitled to any relief that the Court can grant, regardless of whether it asks for the proper relief," it is sufficiently plead.[7]

## Discussion

### A. Statutory Damages

The Defendant argues that the complaint should be dismissed because it does not identify which provision of the TILA gives rise to their claim for statutory damages. According to their response, the Plaintiffs seek statutory damages for a violation of the disclosure requirements of 15 U.S.C. § 1638(a)(2), relating to disclosure of the "amount financed."  Section 1638(a)(2)(B)(iii) provides that when the amount financed is disclosed, the disclosure must include an itemization of "each amount that is or will be paid to third

---

[5] Int'l Erectors, Inc. v. Wilhoit Steel Erectors Rental Serv. 400 F.2d 465, 471 (5th Cir. 1968).

[6] Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  See also Cook & Nichol, Inc. v. The Plimsoll Club, 451 F.2d 505 (5th Cir. 1971).

[7] Dotschay v. Nat. Mut. Ins. Co., 246 F.2d 221 (5th Cir. 1957).

persons by the creditor on the consumer's behalf, together with an identification of or reference to the third person. . . ." The Plaintiffs believe that the excess of the unpaid balance on the trade-in over the trade-in's actual value should have been itemized as part of the "amount financed" because it was paid to a third party and resulted in a corresponding increase in the cash price (the "amount financed") of the purchased vehicle.

The statutory damages available under the TILA are outlined in 15 U.S.C. § 1640(a), which provides in relevant part:

> In connection with the disclosures referred to in section 1638 of this tile, a creditor shall have a liability determined under paragraph (2) [the statutory damage provision] only for failing to comply with the requirements of . . . paragraph (2) (insofar as it requires a disclosure of the "amount financed") . . . of section 1638(a) of this title. . . .[8]

Several courts, including the Eighth Circuit and a district court in this district, have interpreted § 1640(a) to mean that statutory damages under the TILA for violations of the disclosure requirements under § 1638(a)(2) are available only for a failure to disclose the entire "amount financed" as required by § 1638(a)(2)(A).[9]  The failure to properly disclose

---

[8] 15 U.S.C. § 1640(a)(4).

[9] Peters v. Jim Lupient Oldsmobile Co., 220 F.3d 915, 917 (8th Cir. 2000) ("[T]he only remedy for a violation of § 1638(a)(2)(B)(iii) is actual damages. . . ."); Nevarez v. O'Connor Chevrolet, Inc., 303 F. Supp. 2d 927, 934 (N.D. Ill. 2004) (holding that statutory damages are not available for a defendant's failure to accurately itemize the components of the amount financed); Haun v. Don Mealy Imports, Inc., 285 F. Supp. 2d 1297, 1304 (M.D. Fla. 2003) (Sharp, J.) (holding that "only a failure to disclose the entire 'amount financed' as required by § 1638(a)(2)(A) implicates statutory damages liability. Failure to itemize the amount financed, as required by § 1638(a)(2)(B), does not subject a creditor to statutory damages liability."); Martin v. Equity One Consumer Discount Co., 194 F. Supp. 2d 469, 472 (W.D. Va. 2002) ("Defendants who violate other provisions of § 1638(a)(2), including § 1638(a)(2)(B)(iii), are not liable for statutory damages.") (citing cases); Rugumbwa v. Betten Motor Sales, 200 F.R.D. 358, 364 (W.D. Mich. (continued...)

the "itemization of the amount financed" as required by § 1638(a)(2)(B) does not subject a defendant to statutory liability under TILA.  Because the Plaintiffs only allege that a violation § 1638(a)(2)(B) occurred, the Plaintiffs have not stated a claim for statutory damages under TILA.

## B. Actual Damages

The Defendant also argues that the Plaintiffs have not pled actual damages under TILA.  To recover actual damages for a violation of the TILA, the Plaintiffs must prove that they relied on the Defendant's faulty disclosure to their detriment.[10]  To prove detrimental reliance, the Plaintiffs must show four things: (1) they read the TILA disclosure statement; (2) they understood the charges being disclosed; (3) had the disclosure statement been accurate, they would have sought a lower price; and (4) they would have obtained a lower price.[11]  The Plaintiffs have not alleged how the Defendant's failure to provide a properly itemized amount financed disclosure caused them to suffer any injury.  They have not alleged that had they known the cash price included the balance of the debt on their trade-in, they would have sought and obtained a lower price.  The price of the new vehicle was

---

[9](...continued)
2001) ("Statutory damages are not available under § 1638 for failure to disclose the itemization of the amount financed."); Kent v. Celozzi-Ettleson Chevrolet, Inc., No. 99-C-2868, 1999 WL 1021044 at * 8 (N.D. Ill. Nov. 3, 1999) (holding that "statutory damages under § 1640(a)(2) may be recovered only as to certain types of TILA violations, and § 1638(a)(2)(B)(iii) is not one of them.").

[10] Turner v. Beneficial Corp., 242 F.3d 1023 (11th Cir. 2001) (en banc) (holding that detrimental reliance is a necessary element of a claim for actual damages under the TILA) (overruling Jones v. Bill Heard Chevrolet, Inc., 212 F.3d 1356 (11th Cir. 2000) and Ransom v. S&S Food Center, Inc., 700 F.2d 670 (11th Cir. 1983)).

[11] Peters, 220 F.3d at 917; Perrone v. General Motors Acceptance Corp., 232 F.3d 433, 437 (5th Cir. 2000).

disclosed to the Plaintiffs, and the Plaintiffs agreed to purchase the vehicle at that price.

When the alleged violations of statutorily mandated disclosure requirements and the like

are sorted through, it is apparent that this suit is founded on nothing more than the

allegation that the Plaintiffs made a bad bargain and paid more for their new car than it was

worth.  As a consequence, the only claim for actual damages being made here is that the

Plaintiffs were damaged by agreeing to pay too much for their car.  The Plaintiffs have not

alleged that a disclosure violation, if any, caused them any harm.  Accordingly, the motion

to dismiss is due to be granted.[12]

---

[12] If the Plaintiffs' failure to allege damages were the only ground for dismissal, the Court would dismiss the complaint with leave to amend. However, because it is apparent on the face of the complaint that the statute of limitations bars this claim and because it is beyond a doubt that the Plaintiffs can prove no basis for equitable tolling of the limitations period, the complaint is due to be dismissed with prejudice. La Grasta v. First Union Securities, Inc., 358 F.3d 840, 845 (11th Cir. 2004) (Dismissal under Fed. R. Civ. P. 12(b)(6) "on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred.")(quotations omitted); Tello v. Dean Witter Reynolds, Inc., — F.3d — , No. 03-12545, 2005 WL 1279130 * 16 n. 12 (11th Cir. June 1, 2005) ("At the motion-to-dismiss stage, a complaint may be dismissed on the basis of a statute-of-limitations defense 'only if it appears beyond a doubt that Plaintiffs can prove no set of facts that toll the statute.") (quotations omitted).  15 U.S.C. § 1640(e) provides, in pertinent part: "Any action under this section may be brought in any United States district court . . . within one year from the date of the occurrence of the violation." Paragraph 5 of the complaint and the attached sale contract show that the transaction and the alleged TILA violation occurred on March 2, 2004.  The docket reflects that the complaint was filed more than one year later on March 4, 2005.  All of the operative facts alleged in the complaint were known or should have been known by the Plaintiffs on the date of the transaction.  The price of the new vehicle, the trade-in allowance, and the amount owed on the trade-in were all disclosed to the Plaintiffs by the Defendant at the time of the purchase.

**Conclusion**

Upon due consideration and for the forgoing reasons, it is ordered that the Defendant's motion to dismiss (Doc. 4) is GRANTED, and the Clerk is directed to enter judgment dismissing this case with prejudice.  The Clerk is further directed to terminate any pending motions and close the file.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 11th day of July, 2005.

_____
UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record
             Maurya McSheehy